Case 8:18-cv-02166-JSM-CPT Document 2 Filed 08/30/18 Page 1 of 19 PageID 8
Filing # 75468459 E-Filed 07/25/2018 10:00:27 AM

EXHIBIT A

## IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## SMALL CLAIMS DIVISION

| | |
|---|---|
| **Darryl Wright,** | Case Number: _____ |
| *Plaintiff,* | |
| v. | Division: _____ |
| **Security Credit Services, LLC, and MRS BPO, LLC,** | Ad Damnum: $3,000 + Atty Fees and Costs |
| *Defendants.* | **Jury Trial Demanded** |

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Darryl Wright**, ("Mr. Wright"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Security Credit Services, LLC** ("SCS"), and **MRS BPO, LLC** ("MRS") (jointly "the **Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. Mr. Wright brings this action against SCS and MRS for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.* ("FCRA"), and the Florida Consumer Collection Practices Act, Section 559.55, Florida Statutes *et. seq.* ("FCCPA").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, the FCCPA, Section 559.77 (1), Florida Statutes, and Section 34.01, Florida Statutes.

3. SCS and MRS are subject to the provisions of the FDCPA, FCRA and the FCCPA, and are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Pursuant to Section 47.051, Florida Statutes, venue is proper in Hillsborough County, Florida, because the acts complained of were committed and / or caused by the Defendants within Hillsborough County.

### PARTIES – MR. WRIGHT

5. Mr. Wright is a natural person residing in Hillsborough County, Florida and is a "consumer" as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

### PARTIES - SCS

6. SCS is a Mississippi limited liability company with a primary business address of 2706 West Oxford Loop, Suite 105, Oxford, MS 38655.

7. SCS is registered to do business in the State of Florida where its Registered Agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

8. SCS is a "debt collector" within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that the it uses postal mail or other instrumentality of commerce, interstate and within the state of Florida, for its business, the principal purpose of which is the collection of debts. Alternatively, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

9. SCS has registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("CCA") and is licensed as a consumer collection agency, bearing license number CCA9902463. **SEE PLAINTIFF'S EXHIBIT A.**

## PARTIES - MRS

10. MRS is a New Jersey limited liability company, with a primary business address of 1930 Olney Avenue, Cherry Hill, NJ 08003.

11. MRS is registered to do business in the State of Florida where its Registered Agent is **Cogency Global, Inc., 115 North Calhoun St., Suite 4, Tallahassee, FL, 32301.**

12. MRS is a "debt collector" within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that the it uses postal mail or other instrumentality of commerce, interstate and within the state of Florida, for its business, the principal purpose of which is the collection of debts. Alternatively, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

13. MRS has registered with the Florida Office of Financial Regulation as a Consumer Collection Agency ("**CCA**") and is licensed as a consumer collection agency, bearing license number CCA0900813. **SEE PLAINTIFF'S EXHIBIT B.**

## FACTUAL ALLEGATIONS

14. Around August 2014, Mr. Wright supposedly obtained a lease from WhyNotLeaseIt, LLC, ("**WhyNotLeaseIt**") in the amount of $1,108 (the "**Debt**").

15. The Debt arose from services which were primarily for family, personal, and household purposes, and meets the definition of "debt" under 15 U.S.C. § 1692a(5) and Section 559.55(6), Florida Statutes.

16. Mr. Wright disputes owing the Debt.

17. WhyNotLeaseIt leases consumer goods which consumers can pick up at particular retailers, such as Sears and K-Mart. **SEE PLAINTIFF'S EXHIBIT C**

18. WhyNotLeaseIt does not provide credit of any sort to consumers; rather, it provides leasing services in which the consumer leases the goods for a specific period of time, typically five months. *Id.*

19. On WhyNotLeaseIt's website, under the "frequently asked questions" page, it states "a lease is not a loan, there is no interest rate" as an answer to "What is the interest rate?"

20. Thus, even assuming, *arguendo*, that Mr. Wright had in fact leased consumer goods through WhyNotLeaseIt, he did not engage in a consumer credit transaction.

21. On or around December 29, 2014, SCS, purchased the Debt from WhyNotLeaseIt.

22. SCS reported the Debt to **Consumer Credit Reporting Agencies ("CRAs")** including Trans Union, claiming the amount of the Debt was $1,108.

23. Mr. Wright disputed the Debt to Trans Union on October 2, 2017.

24. Trans Union notified SCS of the dispute via an Automated Consumer Dispute Verification ("**ACDV**") request sent through e-OSCAR, an online system used by the CRAs to communicate with furnishers of data, including debt collectors.

25. SCS was therefore aware Mr. Wright disputed the Debt.

26. Thereafter, SCS indicated the Debt was disputed in its report to Trans Union. **SEE PLAINTIFF'S EXHIBIT D.**

27. Around May 2018, SCS assigned, transferred, or otherwise placed the Debt with MRS for collection.

28. At all times relevant, MRS was acting as SCS's agent and at the direction of SCS.

29. When SCS placed the debt with MRS for collection, it disclosed to MRS details about Mr. Wright, including the fact that he allegedly owed a $1,108 debt to WhyNotLeaseIt, in connection with the collection of a debt.

30. Mr. Wright never gave SCS consent to divulge information about him to MRS, a company which was, at that time, a third party.

31. The FDCPA at 1692c(b) prohibits communication with any third party in connection with the collection of a debt other than the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector.

32. MRS is not the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector.

33. Thus, the FDCPA explicitly prohibited SCS from disclosing any information in connection with collection of the Debt to MRS. See 15 U.S.C. 1592c(b).

34. Additionally, SCS failed to disclose in its communications to MRS that the Debt was disputed, despite knowing it to be.

35. On May 25, 2018, MRS requested a credit bureau report ("**CBR**") regarding Mr. Wright from Experian Information Solutions ("**Experian**"), a CRA. **SEE PLAINTIFF'S EXHIBIT E.**

36. MRS requested Mr. Wright's CBR to obtain information, such as Mr. Wright's current address, employer, and phone number, and was clearly done in connection with MRS' efforts at collection of the Debt.

37. To lawfully request a CBR from a CRA, when seeking to collect a debt, the debt must involve a *credit transaction involving the consumer*. See 15 U.S.C. §1681b(a)(3)(A).

38. Debt collection is a permissible reason for obtaining a credit report "**only when a debt arises from a transaction in which the debtor voluntarily and directly seeks credit;**" a debt collector does not have permissible purpose simply because the consumer owes a debt. See Baron v. Mark A. Kirkorsky, P.C. (Case No. 17-cv-01118, U.S.D.C., District of Arizona) (emphasis added).

39. "Credit means the right granted by a creditor to a debtor to *defer payment* of debt or to incur debts and *defer its payment* or to purchase property or services and *defer payment* therefor." See 15 U.S.C. § 1691a(d) of the Equal Opportunity Credit Act. *Emphasis Added.*

40. A "credit transaction" involving the consumer is a transaction in which the consumer voluntarily participated and entered into an agreement to receive *goods or services in advance of payment*, with the consent of both parties. See Pintos v. Pacific Creditors Association, 504 F. 3d 792, 798 (9th Cir. 2007). *Emphasis Added.*

41. WhyNotLeaseIt required payment in advance for each lease period.

42. WhyNotLeaseIt did not grant any credit to Mr. Wright.

43. Thus, even if MRS believed Mr. Wright had entered into a lease agreement with WhyNotLeaseIt, MRS still had no "permissible purpose" pursuant to the FCRA to request MR. Wright's CBR. See 15 U.S.C. §1681b(a)(3)(A).

44. MRS requested Mr. Wright's consumer credit report from Experian despite knowing that the underlying debt originated from a lease and did not arise from a credit transaction.

45. On information and belief, Experian requires a debt collector to certify that it has a permissible purpose to obtain a report when requesting a consumer report.

46. That being the case, MRS falsely certified to Experian that it had a permissible purpose under the FCRA to obtain Mr. Wright's report when it knew, or should have known that it did not.

47. On May 26, 2018, MRS mailed a letter to Mr. Wright in an attempt to collect a debt, and thus communicated with Mr. Wright. **SEE PLAINTIFF'S EXHIBITS F.**

48. The communication contained no disclosure that MRS and SCS were aware the debt was disputed and would treat it as such. *Id.*

49. The letter stated that "You are hereby notified that a negative credit report reflecting on your credit record may be submitted by Security Credit Services (owner of the account referenced herein) to credit reporting agencies for as long as the law permits reporting." *Id.*

50. This wording appears, nearly verbatim, in collection letters sent by other third-party debt collectors hired by SCS, *e.g.* Northstar Location Services, to collect debts. **SEE PLAINTIFF'S EXHIBIT G.**

51. Upon information and belief, SCS instructed MRS to include the above paragraph in its collection letters.

52. SCS failed to instruct MRS to disclose in its communication that SCS had an obligation to disclose in its reports to the CRAs that the debt was disputed.

53. Additionally, the MRS letter stated, "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid," even though the debt in fact had already been disputed on October 2, 2017.

54. An unsophisticated consumer would be misled and disadvantaged when charting a course of action to take regarding a debt when receiving a collection letter telling him that a debt he had *already* disputed would be considered "valid" unless he re-disputed the debt within 30 days.

55. At all times relevant, MRS was acting as SCS' agent and within its scope of agency; therefore, MRS and SCS are both liable for MRS' actions.

56. SCS's dissemination of information about the Debt to MRS with instructions to collect the Debt was a "communication" as defined by 15 U.S.C. § 1692a(2) and Section 559.55(2), Florida Statutes, as was MRS' collection letter.

57. Mr. Wright has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees.

## COUNT I
## VIOLATIONS OF THE FDCPA

58. Mr. Wright incorporates paragraphs 1 – 57 as if fully restated herein.

59. SCS violated **15 U.S.C. § 1692c(b)** in that it communicated with, and disclosed information regarding a debt to, a third party, MRS, without Mr. Wright's consent.

60. SCS violated **15 U.S.C. § 1692e(2)(a)** in that it made false representations regarding the character or legal status of the debt by:

   a. failing to inform MRS that the Debt was disputed despite knowledge of Mr. Wright's dispute; and,

   b. instructing MRS to tell Mr. Wright it would report the Debt to the CRAs if payment was not made without also disclosing that the debt was disputed.

61. SCS violated **15 U.S.C. § 1692e and 1692e(10)** in that it used false, deceptive, and misleading representations in connection with the collection of a debt by:

   a. failing to inform MRS that the Debt was disputed despite knowledge of Mr. Wright's dispute; and,

   b. instructing MRS to tell Mr. Wright it would report the Debt to the CRAs if payment was not made without also disclosing that the debt was disputed.

62. SCS violated **15 U.S.C. § 1692e(8)** in that it communicated credit information to MRS it knew to be disputed, but failed to disclose that fact.

63. SCS violated **15 U.S.C. § 1692f** in that SCS engaged in unfair and unconscionable efforts to collect a debt by:

   a. failing to inform MRS that the Debt was disputed despite knowledge of Mr. Wright's dispute; and,

    b.    instructing MRS to tell Mr. Wright it would report the Debt to the CRAs if payment was not made without also disclosing that the debt was disputed.

64.    Both Defendants violated **15 U.S.C. § 1692e(2)(a)** when MRS, as an agent for SCS:

    a.    sent a collection letter to Mr. Wright in May 2018, telling him the purported debt would be considered "valid" if he did not dispute the debt within 30 days of receipt of the letter, even though Mr. Wright had already disputed the debt in October 2017; and,

    b.    requested a CBR from Experian, falsely certifying to Experian that the debt was a "credit" transaction when it knew it was not.

65.    Both Defendants violated **15 U.S.C. § 1692e and 1692e(10)** when MRS, as an agent for SCS, used false, deceptive, and misleading representations in connection with the collection of a debt and to obtain information about Mr. Wright by falsely certifying to Experian it had a permissible purpose to obtain a CBR, when the Defendants did not.

66.    Both Defendants violated **15 U.S.C. § 1692e(8)** when MRS, as an agent for SCS, falsely communicated credit information to Experian, to wit, that the debt was the result of a credit transaction, when in fact the debt – even if it was somehow valid – was never alleged to be the result of a credit transaction.

67.    Both Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE**, Mr. Wright respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA

68. Mr. Wright incorporates paragraphs 1 – 57 as if fully restated herein.

69. SCS violated Section 559.72(6), Florida Statutes, in that it disclosed information regarding the alleged debt to MRS which it knew Mr. Wright disputed, but failed to disclose the fact Mr. Wright disputed it.

70. SCS violated Section 559.72(6), Florida Statutes, in that it instructed its agent, MRS, to include language in a collection letter threatening to report the disputed debt to the CRAs, but failed to instruct MRS to disclose that it would be reported as a disputed debt.

71. Both Defendants violated Section 559.72(9), Florida Statutes, in that MRS, as an agent for SCS, asserted the existence of a legal right which does not exist, to wit, obtaining a CBR from Experian, even though it knew the debt was not a credit-based transaction and as such no permissible purpose to obtain a report exists under the FCRA.

72. SCS's actions were willful and intentional, or conducted with a reckless disregard.

73. By their conduct, the Defendants are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Wright respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b. Actual damages pursuant to Section 559.77(2), Florida Statutes;

c. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Wright pursuant to Section 559.77(2), Florida Statutes;

d. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e. Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FCRA

74. Mr. Wright adopts and incorporate paragraphs 1 – 57 as if fully stated herein.

75. MRS violated **15 U.S.C. § 1681b(f),** either willfully and intentionally, or recklessly and without regard for a consumer's rights, when it requested a credit report regarding Mr. Wright, at a time when it lacked a permissible purpose for doing so.

76. MRS is liable under the FCRA to Mr. Wright in a statutory amount up to $1,000 *per incident.*

**WHEREFORE,** Mr. Wright respectfully requests this honorable Court to enter judgment in his favor, and against the Defendants, jointly and severally, for:

a. The greater of Mr. Wright's actual damages or statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

    c.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Wright demands a jury trial on all issues so triable.

Respectfully submitted this July 25th, 2018, by:

/s/*Thomas M. Bonan*
Thomas M. Bonan
FL Bar # 118103
SERAPH LEGAL, P. A.
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
tbonan@seraphlegal.com
Counsel for Plaintiff

## EXHIBITS

A    SCS's Florida Consumer Collection Agency License Record

B    MRS's Florida Consumer Collection Agency License Record

C    Screenshot of "How it Works" page from whynotleaseit.com

D    Plaintiff's Trans Union Consumer Disclosure
    Dated October 19, 2017 – Tradeline Excerpt

E    Plaintiff's Experian Consumer Disclosure
    Dated July 21, 2018 – Inquiry Excerpt

F    MRS Consumer Collection Letter Dated May 26, 2018

G    Different Debt Collection Letter sent on behalf of SCS Dated May 1, 2018

# EXHIBIT A
## SCS's Florida Consumer Collection Agency License Record



# EXHIBIT B
## MRS's Florida Consumer Collection Agency License Record



# EXHIBIT C
## Screenshot of "How it Works" Page From whynotleaseit.com



HOW IT WORKS

PICK IT OUT     TAKE IT HOME     LEASE, BUY OR RETURN

# EXHIBIT D
## Plaintiff's Trans Union Consumer Disclosure
## Dated October 19, 2017 – Tradeline Excerpt



SECURITY CREDIT SERVICES #24092**
7653 W OXFORD LOOP
# 106
OXFORD, MS 38655
(850) 999-7555

| | | | | |
|---|---|---|---|---|
| Placed for Collection: | 12/29/2014 | Balance: | $1,108 | Pay Status: >In Collection< |
| Responsibility: | Individual Account | Date Updated: | 10/04/2017 | |
| Account Type: | Open Account | Last Payment Made: | 12/07/2013 | |
| Loan Type: | DEBT BUYER | Original Amount: | $1,108 | |
| | | Original Creditor: | WHYNOTLEASING LLC (Rental/Leasing) | |
| | | Past Due: | >$1,108< | |

Remarks: CISP INVG COMP-RPT BY GRNTR  >PLACED FOR COLLECTION<
Estimated month and year that this item will be removed: 09/2021

Page 16 of 19

# EXHIBIT E
# Plaintiff's Experian Consumer Disclosure
# Dated July 21, 2018 – Inquiry Excerpt



7/21/2018   https://usa.experian.com/#/printReport?type=CDI&acr=true

MRS BPO LLC
Inquired on 05/25/2018

1930 OLNEY AVE CHERRY HILL, NJ 08003

(888) 334-5677

Contact Experian

Online

Visit Experian.com/dispute (https://www.experian.com/dispute) to dispute any inaccurate information, or click the dispute link next to the item. For FAQs and online access to your Experian Credit Report, Fraud Alerts, and Security Freezes, visit Experian.com/help (https://www.experian.com/help)

Phone          Mail

https://usa.experian.com/#/printReport?type=CDI&acr=true                         24/29

Page 17 of 19

# EXHIBIT F
## MRS's Collection Letter, May 26, 2018


S-SFMRSA11
P8E8FG00210749 - 547656067 121498
*Return Address:*
MRS BPO, L.L.C.
1930 OLNEY AVENUE
CHERRY HILL NJ 08003

 **MRS**
Send Payment/Correspondence to:
MRS Associates
1930 OLNEY AVENUE
CHERRY HILL NJ 08003
800-819-8567

Office Hours:
Monday - Thursday  9am - 9pm ET
Friday                      9am - 5pm ET



DARRYL WRIGHT
REDACTED

May 26, 2018

CURRENT CREDITOR: SECURITY CREDIT SERVICES LLC
REDACTED
CURRENT CREDITOR ACCT#: xxxx9293
Total Balance: $1,106.24
Charge off Date: 06/26/2014


Would you prefer to chat with us via the web?
You can visit us at www.mrsbpo.com and chat with a representative.

Dear DARRYL WRIGHT,

The above referenced creditor has placed your account with our office for collection. We recognize that sometimes circumstances or events can make it difficult to satisfy your financial obligations.

Resolving a long overdue debt is never easy. Often the hardest part is taking the first step. We are ready to assist you to find a solution that is both fair and reasonable.

Payment may be made by calling 800-819-8567, mailing to the above address or by using our online payment website at https://mrspay.webview.com (internet connection required).

**IMPORTANT CONSUMER INFORMATION**

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

MRS Associates
800-819-8567
MRS Associates is a trade name of MRS BPO, L.L.C.
LU1.8075933.8590056

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collector.

Credit Reporting Notice - You are hereby notified that a negative credit report reflecting on your credit record may be submitted by Security Credit Services (owner of the account referenced herein) to credit reporting agencies for as long as the law permits reporting.

Privacy Notice - Federal law requires the current owner of the account, Security Credit Services, LLC (SCS) to inform you of how they collect, share, and protect your personal information. SCS's privacy policy has not changed and you may review their policy and practices with respect to your personal information at http://www.securitycreditservicesllc.com; or SCS will mail you a free copy upon request if you call them at 866-699-7889.

# EXHIBIT G
# Different Debt Collection Letter
# Sent on Behalf of SCS Dated May 1, 2018

4285 Genesee Street  
Cheektowaga, NY 14225-1943

**NORTHSTAR**  
**LOCATION SERVICES, LLC**  
1-866-610-2720  
Hours Mon-Thurs 8AM-10PM ET,  
Fri 8AM-8PM ET, Sat 8AM-12PM ET

Return Service Requested

May 1, 2018

REDACTED

Service Provider: Security Credit Services  
Balance: $1,132.07  
Amount Remitted: $ _____



NORTHSTAR LOCATION SERVICES, LLC.  
ATTN: FINANCIAL SERVICES DEPT.  
4285 GENESEE ST  
CHEEKTOWAGA NY 14225

*To ensure proper credit, return this portion with your payment.*

REDACTED

Your account with Security Credit Services has been referred to our office for handling. This account is listed as delinquent with a total amount due of $1,132.07. Please note that your account has been placed with us to seek a resolution.

You are hereby notified that a negative credit report reflecting on your credit record may be submitted by Security Credit Services (owner of the account referenced herein) to credit reporting agencies for as long as law permits reporting.

As of the date of this letter, your overdue balance with interest now equals the sum of $1,132.07. Because of interest, late charges and other charges that may vary day to day, the amount due on the day you pay may be greater. As a result, if you pay the amount shown above, an adjustment may be necessary after we receive your payment. If that is the case, we will inform you before depositing the payment. For further information, you may call our office toll free at 1-866-610-2720.

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

To make paying your account more convenient we offer the following payment options:
- Check-by-phone at 1-866-610-2720
- MoneyGram ExpressPayment
- Credit or Debit Card
- Web Pay at www.gotonls.com
- Pay in person at our office
- Enclose your payment in the envelope

You may contact a Northstar Account Representative toll free at 1-866-610-2720 to make your payment.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION


ACA

Payment website: https://www.gotonls.com

Page 19 of 19